# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| Consumer Financial Protection Bureau,<br><br>Petitioner,<br><br>v.<br><br>Community Loans of America, Inc.,<br><br>Respondent. | Case No.: _____<br><br>Date: _____<br><br>**PETITION TO ENFORCE CIVIL INVESTIGATIVE DEMAND AND MEMORANDUM IN SUPPORT** |

Under § 1052(e)(1) of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. § 5562(e)(1), the Consumer Financial Protection Bureau (Bureau) petitions this Court for an order requiring Community Loans of America, Inc. (CLA) to appear and give testimony in accordance with the Bureau's Civil Investigative Demand (CID) issued to CLA on February 13, 2023.[1] Bureau CIDs are administrative subpoenas.[2] The CID at issue in this petition seeks information that is relevant to the Bureau's ongoing investigation into whether CLA has engaged in consumer-lending practices that violate the CFPA and other Federal consumer financial laws.

---

[1] *See* Decl. of John Thompson in Supp. of Pet. to Enforce Civil Investigative Demand (Thompson Decl.), attached hereto as Exhibit 1; *see also* February 23, 2023 Civil Investigative Demand, attached to Thompson Decl. as Exhibit A.

[2] *CFPB. v. Harbour Portfolio Advisors, LLC*, No. 16-14183, 2017 WL 631914, at *1 (E.D. Mich. Feb. 16, 2017) (noting that Bureau CIDs are "a form of administrative subpoena").

## JURISDICTION AND VENUE
## AND INTRADISTRICT ASSIGNMENT

The Bureau is an administrative law enforcement agency of the United States government and is authorized to issue a CID "[w]henever [it] has reason to believe that any person may be in possession, custody, or control of any documentary material or tangible things, or may have any information, relevant to a violation" of a Federal consumer financial law that the Bureau is authorized to enforce.[3]

Proceedings to enforce a CID are initiated by a petition to enforce, typically followed by the court's issuance of an order to show cause why the court should not grant the petition.[4] Section 1052(e)(1) of the CFPA authorizes the Bureau to file a petition to enforce a CID "[w]henever any person fails to comply with [a CID] duly served upon him," and it provides that "the Bureau . . . may file [the petition], in the district court of the United States for any judicial district in which such [noncomplying] person resides, is found, or transacts business."[5] CLA is headquartered in Roswell, Georgia, which is located in Fulton County; thus, this

---

[3] 12 U.S.C § 5562(c)(1).

[4] *Harbour Portfolio Advisors, LLC*, 2017 WL 631914, at *2; *CFPB v. Heartland Campus Sols., ESCI*, No. CV 17-1502, 2018 WL 1089806, at *1 (W.D. Pa. Feb. 28, 2018), *aff'd*, 747 F. App'x 44 (3d Cir. 2018).

[5] 12 U.S.C. § 5562(e)(1); 12 C.F.R. § 1080.10.

Court has personal jurisdiction over CLA and venue is proper here.[6] Under the Local Rules of Practice in Civil Proceedings before the United States District Court for the Northern District of Georgia, this action should be assigned to the Atlanta Division of this Court.[7]

## STATEMENT OF FACTS

CLA is a small-dollar lender that markets, originates, services, and collects on auto-title loans, which are high-cost, short-term loans secured by the unencumbered title to the borrower's car.[8] CLA is one of the country's largest auto-title lenders and operates several hundred brick-and-mortar storefronts in more than twenty states and Puerto Rico.[9]

Under the CID issued to CLA, the purpose of the Bureau's investigation is:

> to determine whether short-term or small-dollar title lenders or associated persons, in connection with providing short-term or small-dollar title loans, have: (1) improperly induced borrowers to take out, renew, and refinance title-loan products that harmed them; (2) misrepresented the full, long-term costs of serially renewing or refinancing their title-loan products; or (3) misrepresented that their title loans are short-term obligations

---

[6] See 28 U.S.C. § 1391(b)(2) (instructing that venue is proper in "a judicial district in which any [respondent] resides, if all [respondents] are residents of the State in which the district is located" or "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred").

[7] See LR 3.1(B)(1)(a), (3), NDGa.

[8] Thompson Decl., Ex. 1, at ¶ 5.

[9] Community Loans of America, Inc., *About Us*, https://clacorp.com/about-us (last visited August 10, 2023).

> despite being underwritten, structured, and serviced in a manner that renders them longer-term obligations for many borrowers, all in a manner that is unfair, deceptive, or abusive in violation of sections 1031 and 1036 of the CFPA," and whether "Bureau action . . . would be in the public interest."[10]

Before issuing the CID, Bureau counsel contacted CLA's counsel and notified them that the Bureau intended to hold an investigational hearing that would require the testimony of a corporate representative on 12 topics. Bureau counsel asked CLA's counsel to provide convenient dates and times for the company's representative to testify.[11] The company refused to engage in such discussions on the grounds that it preferred that the Bureau "stay the investigation" in light of a constitutional challenge to the Bureau's funding mechanism that was raised in the Fifth Circuit's October 19, 2022, decision in *Community Financial Services Association of America, Ltd. v. Consumer Financial Protection Bureau* ("*CFSA v. CFPB*")[12] and because the Bureau had petitioned for certiorari in that case.[13]

---

[10] February 23, 2023 Civil Investigative Demand, attached to Thompson Decl. as Exhibit A.

[11] Thompson Decl., Ex. 1, at ¶ 6.

[12] 51 F.4th 616 (5th Cir. 2022), *cert. granted*, No. 22-448 (U.S. Feb. 27, 2023).

[13] On February 27, 2023, the Supreme Court granted the Bureau's petition for certiorari in *CFPB v. Cmty. Fin. Serv. Ass'n of Am.*, No. 22-448 (U.S.). The Court will decide whether the Fifth Circuit erred in holding that the Dodd-Frank Wall Street Reform and Consumer Protection Act's provision of funding to the Bureau, 12 U.S.C. § 5497, violates the Appropriations Clause, U.S. Const. Art. I, § 9, Cl. 7. The Court will hear the case next term and is expected to issue a decision by the end of June 2024.

On February 13, 2023, the Bureau served the CID on CLA and CLA's counsel confirmed receipt.[14] The CID scheduled the investigational hearing for March 27, 28, and 29, 2023, at the Bureau's office in Atlanta, Georgia.[15] The CID sought sworn testimony on 12 topics concerning CLA's auto-title lending practices, including the company's policies, procedures, and internal controls related to its marketing, underwriting, originating, sale, and servicing of auto-title loans. The topics also concern CLA's revenue and cost models, auditing practices, employee compensation, the company's relationship with third-party entities, and the roles of various company officers and employees.[16]

On February 23, 2023, the parties met and conferred about the CID by telephone.[17] CLA's counsel informed the Bureau that CLA would not comply with the CID. The only basis that CLA provided for not complying with the CID was the Fifth Circuit's *CFSA v. CFPB* decision and the possibility of Supreme-Court review.[18] During the call, CLA also advised the Bureau that, although it was aware that the Bureau's regulations provided an administrative process through which CLA

---

[14] Thompson Decl., Ex. 1, at ¶ 6.
[15] February 23, 2023 CID, attached to Thompson Decl. (Ex. 1) as Exhibit A.
[16] *Id.*
[17] Thompson Decl., Ex. 1, at ¶¶ 9-11.
[18] *Id.*

could petition to modify or quash the CID within 20 days of the CID's issuance, CLA did not intend to do so.[19] Indeed, CLA did not petition to modify or quash the CID.[20]

## ARGUMENT

Eleventh Circuit courts recognize that administrative agencies must be given wide latitude in asserting their power to investigate by subpoena.[21] So, "[a] district court's role in a proceeding to enforce an administrative subpoena is limited."[22] To obtain a court order enforcing an administrative subpoena, an agency "must establish four things: (1) that the investigation will be conducted pursuant to a legitimate purpose, (2) that the inquiry may be relevant to the purpose, (3) that the information sought is not already within the agency's possession, and (4) that the administrative steps required have been followed."[23] All four elements are satisfied here.

---

[19] *Id.* at ¶ 11; *see* 12 C.F.R. § 1080.6(e) ("Any petition for an order modifying or setting aside a civil investigative demand shall be filed with the Executive Secretary of the Bureau with a copy to the Assistant Director of the Office of Enforcement within 20 calendar days after service of the civil investigative demand . . . . Such petition shall set forth all factual and legal objections to the civil investigative demand, including all appropriate arguments, affidavits, and other supporting documentation.").

[20] Thompson Decl., Ex. 1, at ¶ 12.

[21] *SEC v. Marin*, 982 F.3d 1341, 1352 (11th Cir. 2020); *See also FTC v. Ken Roberts Co.*, 276 F.3d 583, 586 (D.C. Cir. 2001); *see United States v. Constr. Prods. Rsch., Inc.*, 73 F.3d 464, 470 (2d Cir. 1996).

[22] *EEOC v. Tire Kingdom, Inc.*, 80 F.3d 449, 450 (11th Cir. 1996).

[23] *Marin*, 982 F.3d at 1352 (alterations omitted) (quoting *United States v. Powell*, 379 U.S. 48, 57-58 (1964)).

First, the Bureau's investigation has a legitimate purpose; namely, to determine whether CLA's lending practices violate the CFPA's prohibition of unfair, deceptive, or abusive acts or practices or other federal consumer financial laws. The Bureau is statutorily authorized to "regulate[] the provision of consumer financial products and services[,]" and "[i]ts functions include investigating and enforcing violations of federal consumer financial laws."[24] CLA's lending practices fall squarely within the Bureau's broad investigative authority.[25]

Second, the Bureau's CID seeks information that is relevant to its investigation. According to the Eleventh Circuit, "[t]he measure of relevance used in administrative subpoena enforcement actions is quite broad."[26] The Supreme Court has held that an agency request is relevant so long as it is "not plainly incompetent or irrelevant to any lawful purpose" of the agency.[27] Thus, a request is relevant if it "touches a matter under investigation."[28] Moreover, an agency's own appraisal of relevancy must be accepted so long as it is not "obviously wrong," and its request is

---

[24] *Harbour Portfolio Advisors, LLC*, 2017 WL 631914, at *1 (citing 12 U.S.C. §§ 5491(a), 5511).

[25] *See* 12 U.S.C. § 5481(15)(A)(i) (defining "financial product or service" to include "extending credit and servicing loans….").

[26] *Marin*, 982 F.3d at 1355 (alteration omitted) (quoting *United States v. Fla. Azalea Specialists*, 19 F.3d 620, 624 (11th Cir. 1994)).

[27] *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509 (1943); *accord United States v. Kabakibou*, 522 F. Supp. 3d 1307, 1310 (N.D. Ga. 2020).

[28] *Marin*, 982 F.3d at 1355 (quoting *Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*, 878 F.2d 875, 882 (5th Cir. 1989)).

designed to assist the agency in ascertaining whether "the law is being violated in some way and . . . whether or not to file a complaint."[29] The Bureau's CID meets this broad standard for relevance.

The CID's Notification of Purpose explains that the investigation's purpose is to determine whether CLA has engaged in unlawful conduct in connection with the marketing, origination, servicing, or collection of its auto-title-loan products. Consistent with this Notification of Purpose, the Bureau's CID seeks, among other things, sworn testimony from a CLA representative about CLA's auto-title lending practices, including the company's policies, procedures, and internal controls related to its marketing, underwriting, origination, sale, and servicing of auto-title loans. The CID also seeks information related to CLA's revenue and cost models, auditing practices, employee compensation, the company's relationship with third-party entities, and the roles of various company officers and employees. Each area of examination is relevant to the Bureau's investigation—including to the Bureau's determination of whether a legal violation has occurred, what parties may be liable, the amount of consumer redress that may be warranted, and what an appropriate civil money penalty may be.

---

[29] *FTC v. Invention Submission Corp.*, 965 F.2d 1086, 1089-90 (D.C. Cir. 1992).

Third, the CID seeks information that is not already in the Bureau's possession.[30] Although CLA has previously produced documents and answered interrogatories, the company has not provided sworn testimony of any kind about any of the topics of examination in the CID.[31] Sworn testimony of a corporate representative is necessary, among other things, to clarify ambiguities in the document production and interrogatory answers; gather additional information about the company's lending practices, including their highly technical credit-scoring algorithms; authenticate documents; or obtain binding admissions.

Fourth, the Bureau followed all applicable procedural requirements under the CFPA and its implementing regulation for issuing the CID.[32] The CID was issued by a Deputy Assistant Director of the Office of Enforcement and included a detailed Notification of Purpose advising CLA of the nature of the conduct under investigation.[33] The Bureau served the CID on CLA by email under an agreement

---

[30] Thompson Decl., Ex. 1, at ¶ 15.

[31] *Id.*

[32] 12 U.S.C. § 5562(c); 12 C.F.R. § 1080.

[33] Thompson Decl., Ex. 1, at ¶¶ 6-9; *see also* February 23, 2023 CID, attached to Thompson Decl. as Exhibit A.

with counsel.[34] The Bureau also met and conferred with CLA's counsel to discuss objections that CLA had to the CID.[35]

Where, as here, the Bureau has authority to issue the CID and the Bureau has satisfied the four requirements for judicial enforcement of the administrative subpoena, "the burden shifts to the [subpoena recipient] to disprove one of the four *Powell* criteria, or to demonstrate that judicial enforcement should be denied on the ground that it would be an abuse of the court's process."[36]

Finally, the pending challenge to the Bureau's funding mechanism does not permit CLA to ignore the Bureau's CID. The Second Circuit recently rejected a similar gambit in *CFPB v. Law Offices of Crystal Moroney, P.C.*,[37] and, in doing so,

---

[34] *Id*.

[35] *Id.*

[36] *Marin*, 982 F.3d at 1352 (quoting *United States v. Centennial Builders, Inc.*, 747 F.2d 678, 680 (11th Cir. 1984)).

[37] 63 F.4th 174, 181 (2d Cir. Mar. 23, 2023) (holding that "the CFPB's funding structure does not offend the Appropriations Clause").

joined every other court (except for the Fifth Circuit) to consider the issue in upholding the Bureau's funding mechanism.[38]

## PRAYER FOR RELIEF

For the foregoing reasons, the Bureau respectfully requests that this petition be granted and this Court:

1. order CLA to show cause in writing why it should not be required to fully comply with the Bureau's February 13, 2023 CID;

2. after CLA's submission of its response to the order to show cause, order CLA to fully comply with the CID by producing a witness to give oral testimony no more than 14 days after entry of the order;

3. award the Bureau the costs it incurred in maintaining this action; and

4. grant such other relief as this Court deems just and proper.

Respectfully submitted,

*Counsel for Petitioner Consumer Financial Protection Bureau*

ERIC HALPERIN
*Enforcement Director*

Alusheyi J. Wheeler

---

[38] *Compare, e.g.*, *PHH Corp. v. CFPB*, 881 F.3d 75, 95-96 (D.C. Cir. 2018) (en banc) (upholding funding), *abrogated on other grounds by Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020); *CFPB v. CashCall, Inc.*, No. 2:15-cv-7522, 2023 WL 2009938, at *3 (C.D. Cal. Feb. 10, 2023) (same); *CFPB v. TransUnion*, No. 1:22-cv-1880, 2022 WL 17082529, at *5 (N.D. Ill. Nov. 18, 2022) (same); *CFPB v. Citizens Bank, N.A.*, 504 F. Supp. 3d 39, 57 (D.R.I. 2020) (same); *CFPB v. Fair Collections & Outsourcing, Inc.*, No. 8:19-cv-2817, 2020 WL 7043847, at *7-9 (D. Md. Nov. 30, 2020) (same; collecting other cases), *with CFSA*, 51 F.4th at 635-43 (holding funding invalid), *cert. granted*, No. 22-448 (U.S. Feb. 27, 2023).

*Deputy Enforcement Director*

Jade Burns
*Assistant Litigation Deputy*

/s/ Paris Wynn
Paris Wynn (GA Bar No. 933549)
Paris.Wynn@cfpb.gov
Phone: (202) 435-9530
John Thompson (NM Bar No. 139788)
John.Thompson@cfpb.gov
Phone: (202) 435-7270
Nelle Rohlich (WI Bar No. 1047522)
Nelle.Rohlich@cfpb.gov
Phone: (202) 658-8966
April Denise Seabrook (D.C. Bar. 200977)
April.Seabrook@cfpb.gov
Phone: (202) 557-8822

*Enforcement Attorneys*
Consumer Financial Protection Bureau
1700 G Street, NW
Washington, DC 20552
Facsimile: (703) 642-4585