IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| Consumer Financial Protection Bureau,<br><br>Petitioner,<br><br>v.<br><br>Community Loans of America, Inc.,<br><br>Respondent. | Case No.: 1:23-mi-00100-SEG-REV |

**PETITIONER'S OPPOSITION TO MOTION TO STAY**

This is a summary proceeding to enforce a civil investigative demand (CID) that the Consumer Financial Protection Bureau issued more than nine months ago as part of an ongoing investigation into possible violations of federal law. The CID seeks testimony on 12 topics relating to Community Loans of America's (CLA) auto-title-lending business. The Bureau's Petition established why the CID should be enforced. ECF No. 1. The Court ordered CLA to appear at a show-cause hearing on December 4 so that this matter could be expeditiously resolved. ECF No. 2.

Rather than comply with the Court's order, CLA seeks to complicate and delay resolution of this straightforward dispute over whether it must provide testimony evidence about its business operations in response to a valid investigative subpoena. CLA says that it intends to contest the CID's enforceability based on the counterintuitive theory that the funding Congress granted the Bureau

1

is unconstitutional because the Appropriations Clause—which provides that "[n]o Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law," U.S. Const. art. I, § 9, cl. 7—in fact limits the ways Congress can choose to fund government agencies. *See* Stay Mot. at 9-11, ECF No. 3; *see also* 12 U.S.C. § 5497. CLA further claims that because the Supreme Court is currently reviewing the only decision in American history to have ever endorsed that view of the Appropriations Clause, this case—and presumably every other Bureau action in the country—must be halted in its tracks to await the Supreme Court's ruling, which may not come until June 2024.

    The Court should reject that request. The months-long delay that CLA seeks would harm the public interest and the Bureau by hampering the progress of an investigation into potentially ongoing violations of consumer-protection law. At the same time, denying CLA's motion will impose no undue burden or hardship on the company: The only consequence for CLA will be that it must comply with the Court's order to appear at the December 4 show-cause hearing, after filing any opposition to the Petition. Nor will CLA's delay tactics promote judicial economy or the efficient resolution of this case. To the contrary, CLA's requests that the Court reconsider its previously entered show-cause order and postpone further proceedings for months on end have themselves already imposed a greater burden

on the Court and the parties than would have come from simply letting the case move forward as normal.

If the Court is inclined to defer final resolution of this case until after the Supreme Court's decision, it should at minimum require CLA to promptly file any opposition it may have to the Bureau's Petition, so that this matter is ripe for the Court's resolution immediately following the Supreme Court's ruling.

## LEGAL STANDARD

In determining whether to exercise their discretion to stay proceedings, courts consider "the interests of all the parties and the interests of the court." *Hobby Lobby Stores, Inc. v. Woodall Roofing Co., Inc.*, No. 1:11-cv-2566, 2012 WL 12873026, at *4 (N.D. Ga. Sept. 24, 2012) (brackets omitted). "The party seeking a stay bears the burden of justifying the resulting delay." *Sturgis Motorcycle Rally, Inc. v. Mortimer*, No. 2:14-cv-00175, 2015 WL 11439078, at *6 (N.D. Ga. June 11, 2015). "[I]f there is even a fair possibility that the stay … will work damage to someone else," then the moving party "must make out a clear case of hardship or inequity in being required to go forward" before a stay can issue. *Id.* at *6 (quoting *Landis v. N. American Co.*, 299 U.S. 248, 255 (1936)).

## ARGUMENT

The Court should deny CLA's efforts to derail this summary proceeding for three reasons: (i) additional delay of the Bureau's investigation would harm the

public interest; (ii) CLA would suffer no harm from complying with the Court's show-cause order; and (iii) CLA's request would needlessly complicate and protract this proceeding.

**I.     Additional delay of the Bureau's valid law-enforcement investigation would harm the public interest.**

The Bureau issued the CID in February 2023, seeking testimony on topics related to CLA's auto-title lending business, including its practices with respect to originating loans and repossessing consumers' vehicles. ECF No. 3-1 at 3. The CID explained that the Bureau is investigating potential violations of the Consumer Financial Protection Act, including whether CLA has misled consumers about the full costs of its title loans or improperly induced borrowers to renew or refinance. *Id.* at 2. Much of the information sought is uniquely in CLA's possession.

Courts have long recognized that subpoena-enforcement proceedings such as this one are meant "to be summary in nature," *United States v. Clarke*, 573 U.S. 248, 254 (2014) (quotation marks omitted), to support "the important governmental interest in the expeditious investigation of possible unlawful activity," *FEC v. Lance*, 635 F.2d 1132, 1141 (5th Cir. 1981). CLA's proposed delay would thwart that important governmental interest in promptly uncovering violations of law. Should violations in fact be occurring, that delay would also mean more time in which CLA could engage in those violations and more time in

which distressed borrowers would be subject to harmful and illegal practices that only worsen their financial situation.

CLA counters that—unlike some cases in which courts have denied stays—the Bureau here is still investigating whether violations are occurring. Stay Mot. at 13. While true, that hardly supports CLA's erroneous claim that the public and the Bureau would not be prejudiced by a stay. Government investigations do not become important only at the moment that a violation is discovered. CLA's further suggestion that the Bureau can "achieve its investigatory end after the Court lifts the stay," *id.*, is specious and ignores that CID-enforcement proceedings like this are meant to be resolved expeditiously precisely because prompt investigation is so important to effective enforcement of the law.

## II. CLA will not be harmed by complying with the Court's show-cause order.

Because there is, at minimum, "a fair possibility that the stay ... will work damage to some one else," binding precedent requires that to obtain a stay, CLA must "make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255; *see also CFPB v. TransUnion*, No. 1:22-cv-1880, 2023 WL 3605995, at *2 (N.D. Ill. Apr. 13, 2023) (applying this holding and denying stay of Bureau enforcement action).

CLA does not come close to making this showing. Indeed, the *only* consequence for CLA if the Court denies a stay is that it will have to appear for the

scheduled December 4 hearing (and, if it chooses, file any opposition to the Petition). But a party denied a stay will always incur the ordinary costs of litigation as a result. That is why courts have rightly held that "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005); *contra* Stay Mot. at 12 (complaining that CLA will have to devote "significant resources" to litigating this summary CID-enforcement proceeding).

And even if CLA's litigation costs were relevant, they will be minimal here—perhaps less than the effort CLA has already put into its requests to delay this case. Moreover, if CLA finds the cost of participating in this proceeding unduly burdensome, it may easily avoid those costs by providing the information sought by the CID. *Cf. CFPB v. Carnes*, No. 2:23-cv-02151, 2023 WL 6143307, at *13 (D. Kan. Sept. 20, 2023) (denying stay of Bureau collection proceeding and noting that defendants "could have eliminated the need for this lawsuit," and thus the resulting "burden on defendants," by "simply … pay[ing] the judgment").[1]

### III. CLA's request would complicate and protract this summary proceeding.

In response to the Bureau's Petition, the Court scheduled a hearing for December 4 at which it could hear argument on the limited set of issues raised in

---

[1] CLA says it "will be unable to recover the money it has expended to-date." Stay Mot. at 12. But that is true whether or not this case is stayed and thus does nothing to help CLA.

6

this subpoena-enforcement proceeding and then resolve this dispute. Hoping to avoid that straightforward resolution, and ultimately to avoid or at least delay having to provide the Bureau with basic facts about its title-lending operation, CLA urges instead that the Court: first devote its limited time and resources to resolving CLA's overlapping motions to stay this case and to postpone CLA's obligation to answer the Petition; then enter an order keeping this case on hold until as late as June 2024; and at that point un-stay the case in order to finally resolve the parties' dispute and decide whether CLA must provide the testimony first demanded in February 2023.[2] The Court's approach is the better one. The Bureau's Petition can most efficiently be resolved on the timetable the Court has already set.

CLA concedes that the Bureau "has an interest in ensuring that it protects the public from unlawful behavior in the consumer financial services industry." Stay Mot. at 13. It does not dispute that the Bureau's investigation—into violations connected to consumer auto-title lending—is firmly within the Bureau's area of regulatory responsibility. And it has never challenged the relevance of the specific topics listed in the CID or otherwise sought to negotiate any changes to the CID. CLA has only ever raised one argument why it should not have to comply with the

---

[2] CLA is simply incorrect when it says that its request "will not disrupt any pending case deadlines." Stay Mot. at 11. CLA has specifically asked for an extension of its deadline to file an opposition and for a continuance of the Court's show-cause hearing. *See* ECF No. 4.

CID: its claim that Congress violated the Appropriations Clause when it appropriated up to a set amount of money (approximately $597.6 million, adjusted annually for inflation) for the Bureau's operations. *See* 12 U.S.C. § 5497. Thus, it appears that resolving this summary proceeding will require that the Court decide exactly one issue, and that one a pure question of law.

The burden of doing so will not be substantial. Every court to have ever considered the issue—bar one—has easily affirmed the validity of the Bureau's statutory funding provision. *See CFPB v. Law Offices of Crystal Moroney, P.C.*, 63 F.4th 174, 181-83 (2d Cir. 2023) (holding that "the CFPB's funding structure does not offend the Appropriations Clause"); *PHH Corp. v. CFPB*, 881 F.3d 75, 95-96 (D.C. Cir. 2018) (en banc) ("The way the CFPB is funded fits within the tradition of independent financial regulators."), *abrogated on other grounds by Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020); *CFPB v. Nexus Servs., Inc.*, No. 5:21-cv-00016, 2023 WL 5019529, at *6 (W.D. Va. Aug. 7, 2023) (explaining that, were the court to reach the merits, it "would follow the line of cases concluding that the CFPB's funding structure does not violate the separation of powers principles contained in the Appropriations Clause"); *CFPB v. Consumer Advoc. Ctr., Inc.*, No. 19-cv-1998, 2023 WL 5162392, at *6-7 (C.D. Cal. July 7, 2023) ("the Bureau's funding scheme does not violate the Appropriations Clause"); *CFPB v. CashCall, Inc.*, No. 2:15-cv-7522, 2023 WL 2009938, at *3 (C.D. Cal. Feb. 10,

2023) ("the CFPB's funding structure does not violate … the Appropriations Clause"); *CFPB v. TransUnion*, No. 1:22-cv-1880, 2022 WL 17082529, at *5 (N.D. Ill. Nov. 18, 2022) ("agree[ing] with the conclusion reached by this substantial majority of courts" and upholding Bureau's funding).[3]

---

[3] *See also CFPB v. Center for Excellence in Higher Education*, No. 2:19-cv-00877, 2022 WL 4182301, at *6 (D. Utah Sept. 13, 2022) ("the court does not find the Bureau's appropriations structure unconstitutional"); *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 558 F. Supp. 3d 350, 364 (W.D. Tex. 2021) ("if a statute authorizes an agency to receive funds up to a certain cap, as the CFPA authorizes the Bureau to do, there is no Appropriations Clause issue"), *rev'd in relevant part*, 51 F.4th 616 (5th Cir. 2022); *CFPB v. Citizens Bank, N.A.*, 504 F. Supp. 3d 39, 56-57 (D.R.I. 2020) (rejecting claim that "the CFPB's funding structure is unconstitutional"); *CFPB v. Fair Collections & Outsourcing, Inc.*, No. 19-cv-2817, 2020 WL 7043847, at *9 (D. Md. Nov. 30, 2020) ("the CFPB's funding structure complies with the Appropriations Clause's mandate"); *CFPB v. Think Finance LLC*, No. 17-cv-127, 2018 WL 3707911, at *1-2 (D. Mont. Aug. 3, 2018) (rejecting claim that Bureau's funding "unconstitutionally interferes with Congress's power to direct federal spending pursuant to the Appropriations Clause"); *CFPB v. Navient Corp.*, 3:17-cv-101, 2017 WL 3380530, at *16 (M.D. Pa. Aug. 4, 2017) (holding that the Bureau's funding is not "constitutionally concerning"); *CFPB v. NDG Fin. Corp.*, No. 15-cv-5211, 2016 WL 7188792, at *21 (S.D.N.Y. Dec. 2, 2016) (rejecting claim that Bureau action was invalid merely "because [the Bureau] may seek funding from outside the ordinary appropriations process"); *CFPB v. D & D Mktg.*, No. 15-cv-9692, 2016 WL 8849698, at *5 (C.D. Cal. Nov. 17, 2016) (holding that Bureau's funding "does not violate the Appropriations Clause because it was still Congress … that made the decision about how the CFPB should be funded"); *CFPB v. ITT Educ. Servs., Inc.*, 219 F. Supp. 3d 878, 896 (S.D. Ind. 2015) ("the Constitution does not prohibit Congress from enacting funding structures for agencies that differ from the procedures prescribed by the ordinary appropriations process"); *CFPB v. Morgan Drexen, Inc.*, 60 F. Supp. 3d 1082, 1089 (C.D. Cal. 2014) ("the structure of the CFPB does not violate the Appropriations Clause").

Courts have likewise rejected similar attacks on analogously funded agencies. *See Rop v. Fed. Hous. Fin. Agency*, 485 F. Supp. 3d 900, 939-40 (W.D. Mich. 2020) (rejecting "the notion that an independent source of funding creates a separation-of-powers problem"), *rev'd in part on other grounds and remanded*, 50 F.4th 562 (6th Cir. 2022); *Bhatti v. Fed. Hous. Fin. Agency*, 332 F. Supp. 3d 1206, 1217 (D. Minn. 2018) (holding that Congress's choice to fund agency via its organic statute "does not violate the principle of separation of powers"), *rev'd in part on other grounds and remanded*, 15 F.4th 848 (8th Cir. 2021).

That is because, as the Supreme Court has long emphasized, the "command of the Appropriations Clause" is "straightforward and explicit": "'It means simply that no money can be paid out of the Treasury unless it has been appropriated by an Act of Congress.'" *OPM v. Richmond*, 496 U.S. 414, 424 (1990) (quoting *Cincinnati Soap Co. v. United States*, 301 U.S. 308, 321 (1937)). "[I]n other words, the payment of money from the Treasury must be authorized by a statute." *Id.* The Bureau's funding is so authorized. *See* 12 U.S.C. § 5497. It thus "does not offend the Appropriations Clause." *Moroney*, 63 F.4th at 181.

While CLA will be able to point to the one case going the other way—*Community Financial Services Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616 (5th Cir. 2022) ("*CFSA*"), *cert. granted*, No. 22-448 (oral argument held on Oct. 3, 2023)—that erroneous outlier decision is not persuasive and, to date, no court before or since has agreed with its analysis. The mere existence of one decision on the short side of an 18-1 split—and that one outlier currently undergoing further review—does not itself demonstrate that it will be especially burdensome for this Court to resolve the issue in the ordinary course.

Moreover, to halt this (and seemingly every other) Bureau enforcement action until as late as June 2024 would hamstring effective enforcement of federal law and improperly give nationwide effect to one circuit's outlier ruling. Thus, multiple courts across the country have denied similar requests for stays.

*See, e.g.*, Order, *CFPB v. CashCall, Inc.*, No. 23-55259 (9th Cir. June 15, 2023), ECF No. 13 (denying stay of briefing in appeal from Bureau enforcement action); *TransUnion*, 2023 WL 3605995, at *2 (denying stay of Bureau enforcement action); *Carnes*, 2023 WL 6143307, at *13-14 (same); Order, *CFPB v. Commonwealth Equity Grp., LLC*, No. 1:20-cv-10991 (D. Mass. May 1, 2023), ECF No. 104 (same). While some other courts have granted stays pending the outcome in *CFSA*, those decisions do not control here and are unpersuasive, including because they give insufficient weight to the harms of a stay.

## CONCLUSION

For all these reasons, the Court should deny CLA's motion to stay. In the alternative, the Court should at least require CLA to file any objection to the Petition by the current deadline of November 29, so that this case is ripe for decision following the Supreme Court's ruling in *CFSA*.

Dated:  November 21, 2023                     Respectfully submitted,

*Counsel for Petitioner Consumer Financial Protection Bureau*

Eric Halperin
*Enforcement Director*

Alusheyi J. Wheeler
*Deputy Enforcement Director*

Jade Burns
*Assistant Litigation Deputy*

/s/ Kevin E. Friedl
Kevin E. Friedl (NY Bar No. 5240080)
Kevin.Friedl@cfpb.gov
Phone: (202) 435-9268
Paris Wynn (GA Bar No. 933549)
Paris.Wynn@cfpb.gov
Phone: (202) 435-9530
John Thompson (NM Bar No. 139788)
John.Thompson@cfpb.gov
Phone: (202) 435-7270
Nelle Rohlich (WI Bar No. 1047522)
Nelle.Rohlich@cfpb.gov
Phone: (202) 658-8966
April Denise Seabrook (DC Bar
  No. 200977)
April.Seabrook@cfpb.gov
Phone: (202) 557-8822
*Attorneys*
Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1D

Pursuant to Local Rule 7.1D, the undersigned counsel certifies that this document has been prepared using Times New Roman 14-point font.

/s/ Kevin E. Friedl
Kevin E. Friedl

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2023, the foregoing was filed electronically via the CM/ECF system and a true and correct copy was served on CLA's counsel via email.[4]

/s/ Kevin E. Friedl
Kevin E. Friedl

---

[4] The Bureau's Opposition to Respondent's Motion for a 21-Day Extension of Time, ECF No. 6, will be served via email on CLA's counsel contemporaneously with this filing.